UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOHN L. BEALES,

      Plaintiff,

  v.                                                     Case No. 08-C-355

CITY OF PLYMOUTH,
DONN DAVIS,
JEFFREY TAUSCHECK,
DALE LENGLING,
DAVID KOBALL,
GERALD BRACHMANN,
PAUL HAAG,
DAWN KLISTER,
and MATTHEW STARKER,

      Defendants.

---

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

### I. PROCEDURAL BACKGROUND

This action was commenced on April 28, 2008, when the plaintiff, John L. Beales ("Beales"), filed a complaint in the United States District Court for the Eastern District of Wisconsin pursuant to 42 U.S.C. § 1983.[1] In his complaint, Beales claims that the defendants, the City of Plymouth and Donn Davis ("Davis"), Jeffrey Tauscheck ("Tauscheck"), Dale Lengling ("Lengling"), David Koball ("Koball"), Gerald Brachmann ("Brachmann"), Paul Haag ("Haag"), Dawn Klister ("Klister"), and Matthew Starker ("Starker"), who were or are employees of the Plymouth Police Department, violated his constitutional right to equal protection. In particular, Beales claims that the defendants denied him "effective police protection" and engaged in selective enforcement of the laws of Wisconsin.

---

[1] Although Beales is proceeding pro se, Beales has a law degree from an accredited law school, and he was a licensed attorney for approximately twenty-five years in both Wisconsin and Washington, D.C. (Wolfgang Reply Aff. Exs. 1-2.)

(Compl. ¶¶ 15-19.) The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(1). All parties have consented to the exercise of jurisdiction by a magistrate judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).

This matter is now before the court on the defendants' motion for summary judgment, which was filed on September 30, 2009. The motion has now been fully briefed and is ready for resolution. For the reasons that follow, the defendants' motion for summary judgment will be granted.

## II. FACTUAL BACKGROUND

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendants' motion for summary judgment was accompanied by a set of proposed findings of fact. Beales has not filed a response to the defendants' proposed findings of fact. Civil Local Rule 56.2(b) provides as follows:

> Response. Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:
>
> (1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.
>
> In turn, Civil Local Rule 56.2(e) provides as follows:
>
> In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.
>
> However, General Local Rule 1.1 (E.D. Wis.) provides as follows:
>
> Compliance with the rules is expected. However, the rules are intended to be enforced primarily upon the Court's own initiative, and the filing of motions alleging noncompliance with a rule may be reserved for egregious cases.

Beales failed to respond to the defendants' proposed findings of fact and failed to submit his own proposed findings of fact. In any event, he does not seem to dispute the facts as set forth by the defendants. To illustrate, he states that the examples highlighted by the defendants "support[] a finding of disparate, rather than equal, treatment." (Pl.'s Br. at 4.) In light of General Local Rule 1.1 and the general factual agreement between the parties, and giving the plaintiff the benefit of every doubt as the nonmovant, the court will construe Beales' affidavit as his proposed findings of fact. Thus, while the court will accept the defendants' proposed findings of fact, it will also account for the plaintiff's factual recitation in the summary that follows.[2]

Since June 1999, Beales has owned a tavern that is now known as Sawdust Pub, which is located on the 100 block of East Mill Street in Plymouth, Wisconsin. (DPFOF ¶ 11.) Since 2001, Lengling has owned a tavern, known as Cozy Bar, which is also located on the 100 block of East Mill Street in Plymouth, Wisconsin. (DPFOF ¶ 3.) It appears that since 2003, Lengling has also owned another tavern in Plymouth, named Turner Hall. In addition to owning Cozy Bar and Turner Hall, Lengling served as a police officer with the Plymouth Police Department from June 1991 to December 2003. (Tauscheck Aff. ¶ 3.) By way of background, it appears as though defendant Davis acted as the Plymouth Chief of Police before defendant Tauscheck became Chief of Police in February 2007. (Tauscheck Aff. ¶ 1.) It also appears that the remaining defendants are or were police officers with the Plymouth Police Department.

In his Complaint, Beales alleges that he has been denied "effective police protection that is afforded similarly situated businesses and individuals in the City of Plymouth, Wisconsin." (Compl.

---

[2] It must be noted that while the court accepts Beales' affidavit as his proposed findings of fact, the court's factual summary may appear to be incomplete due to additional allegations made by Beales that can be gleaned from his opposition brief, but which are not set forth in his affidavit.

¶ 15.) According to Beales, it takes police twenty minutes to respond to a bar fight. (DPFOF ¶ 25.) In May 2004, Beales' business was burglarized, but after police investigated, no individual was held responsible for the burglary. (Beales Aff. ¶ 3.) Beales also reported a theft from his business in October 2002, at which time he gave films to the police that reflected the perpetrator to be Rudolf Wendling ("Wendling"). (Beales Aff. ¶ 4.) Beales indicates that Wendling admitted to the theft to an assistant district attorney, and it appears that Wendling was found guilty of the theft. (Beales Aff. ¶ 6.) According to Beales, Wendling also vandalized the car of an employee of Sawdust Pub and, although the police investigated the incident, Wendling was never held responsible for the vandalism. (Beales Aff. ¶¶ 7-8.)

Between 2003 and 2004, Beales reported Davis, Tauscheck, and Lengling to the Attorney General's Office. (DPFOF ¶ 12.) He complained that Davis illegally allowed Lengling to own a bar while employed as a police officer. He also complained of the police department's involvement with illegal drug activity he believed to have been going on. (DPFOF ¶¶ 13-14.) According to the defendants, however, it was not a violation of any Plymouth Police Department rule or Plymouth city ordinance for a police officer to own or work in a tavern. (DPFOF ¶ 16.)

Beales also complained to the Attorney General about illegal gambling occurring at Cozy Bar. (DPFOF ¶ 17.) After Beales' complaint was investigated, the director of the Wisconsin Department of Justice indicated that the district attorney "declined prosecution or Beales' complaints were not substantiated." (DPFOF ¶ 18.)

Moroever, Beales runs a shake-of-the-day that is illegal, and he has never been cited by the Plymouth Police Department nor has he been prosecuted. (DPFOF ¶¶ 20-21.) However, Beales has been charged with a disorderly conduct (a charge that was later dismissed) after a May 2002 incident where he was involved in an altercation with a customer who presented false identification. (Beales

4

Aff. ¶ 13.) No reports of other owners, bartenders, or both being cited for disorderly conduct for the same behavior exists within the record.

Between December 2003 and July 2009, Lengling received forty parking tickets, and in February 2008, he received a traffic citation for unsafe backing. (DPFOF ¶¶ 44-45.) Additionally, an employee at Cozy Bar, Susan Noordyk, has received at least seven parking tickets since 1999, when she began working at Cozy Bar. (DPFOF ¶ 42.) Two other employees of Cozy Bar have also received parking tickets. (DPFOF ¶¶ 37, 39.) It is unclear, however, how many parking tickets Beales and his employees have received.

Beales recalls an employee of his being followed, but never stopped, and he does not remember the names of any customers who have been pulled over by the police. (DPFOF ¶¶ 28, 32.) Moreover, Beales alleges that in the last eight years, Plymouth police officers have stopped him for making a "wide turn" five times. (Beales Aff. ¶ 17.)

According to the defendants, Cozy Bar employees have been arrested seven times, five times for operating while intoxicated, once for obstructing an officer, and once for operating a motor vehicle with a suspended driver's license. (DPFOF ¶¶ 37, 39.) A Cozy Bar customer has also been cited for disorderly conduct for his involvement in an altercation while at Cozy Bar. (DPFOF ¶ 38.)

In August 2000, Beales was summoned before the city council, at which time Beales states that the mayor, police chief, deputy police chief, and an attorney threatened to revoke his liquor license if he did not hire off-duty and retired police officers as bartenders and bouncers. (Beales Aff. ¶ 18.) However, Beales has never hired off-duty police officers in this capacity. (Beales Aff. ¶ 18.) Moreover, Beales also states that his liquor license was at stake after refusing to allow Lengling to perform a review of purchasing records at midnight. On that occasion, Davis performed the

inspection. (Beales Aff. ¶ 19.) Notwithstanding the above, it appears as though Beales has never had his liquor license revoked.

Finally, and by way of background, Wis. Stat. § 346.53(5) prohibits any person from stopping or leaving any vehicle closer than fifteen feet to the near limits of a crosswalk. Pursuant to Wis. Stat. § 346.53(5), the metered spots in front of Beales' tavern have been eliminated, where now there exists a yellow painted curb and a sawed off parking meter. (Beales Aff. ¶ 22.) However, there is six feet between the marked parking space and the marked crosswalk "[o]ne block from his bar." (Beales Aff. ¶ 21.)

### III. STANDARD OF REVIEW

A district court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not

6

rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). "A mere scintilla of evidence in support of the nonmovant's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### IV. ANALYSIS

In support of their motion for summary judgment, the defendants offer the following arguments: (1) Beales' claim must be dismissed because the defendants' conduct is protected by

qualified immunity; (2) Beales is not similarly situated to Lengling because Lengling and Cozy Bar employees and customers "have significantly more 'negative' police contacts and arrests than Beales, the 'Sawdust Pub' or its employees and customers," and thus, Beales has "failed to identify someone who is similarly situated, but <u>intentionally</u> treated differently than him"; and (3) "[t]here is no constitutional right to a competent police investigation," and therefore, Beales' inadequate police investigation claim is not cognizable. (Def.'s Br. at 9.)

**A. Qualified Immunity**

The defense of qualified immunity constitutes "a powerful shield that insulates officials from suit as long as their conduct does not violate a 'clearly established' constitutional right 'of which a reasonable person would have known.'" *Gregorich v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The plaintiff bears the burden of proof on this issue." *Id.* For a plaintiff to overcome a defendant's qualified immunity defense, a plaintiff "[f]irst . . . must show that [his] claim states a violation of [his] constitutional or statutory rights; and second, the plaintiff must show that the applicable legal standards were clearly established at the time the defendants acted." *Mitchell v. Randolph*, 215 F.3d 753, 755 (7th Cir. 2000). "The Supreme Court has described qualified immunity as balancing two interests—'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Matrisciano v. Randle*, 569 F.3d 723, 729 (7th Cir. 2009) (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (citing 42 U.S.C. § 1983). Here, the individually named defendants do not dispute that they were acting under color of state law. Thus, my discussion will

8

focus on whether Beales has been deprived of a federal right, privilege, or immunity. In the instant action, the federal right in question is derived from the Equal Protection Clause of the Fourteenth Amendment. Where the plaintiff does not allege membership in a class or group, "the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one.'" *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Class-of-one equal protection claims have succeeded "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

In the present case, Beales is proceeding under a class-of-one equal protection theory as recognized in *Olech*. Generally, Beales asserts two kinds of equal protection claims: (1) a claim that encompasses the plaintiff's belief that he has been denied "effective police protection," which is afforded to others similarly situated; and (2) a claim that encompasses the plaintiff's belief that the defendants have engaged in selective enforcement of the laws.

**1. Police Protection**

Unless Beales can demonstrate that the police decided to withdraw all protection from him out of sheer malice, or because they had been bribed, *see Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000), he cannot maintain his police protection claim. In *Hilton*, the Seventh Circuit stated that the Equal Protection Clause, "concerned as it is with equal treatment rather than with establishing entitlements to some minimum of government services, does not entitle a person to adequate, or indeed to any, police protection." *Id.* Thus, Beales is only denied equal protection if he is the victim of "selective withdrawal of police protection." *Id.*

Beales' first claim fails because he was not denied police protection altogether. Indeed, Beales alleges that he was denied "the *effective* police protection," not that he was denied *all* police protection. (Compl. ¶ 15; emphasis added.) Moreover, it appears that the police responded to Beales'

9

calls for assistance. Furthermore, Beales does not allege that Lengling bribed the police. Because Beales' first category of claims is not cognizable under the Equal Protection Clause, there is no violation with respect to the same.

### 2. Selective Enforcement

The Seventh Circuit in *Hilton* recognized that a class-of-one claim could be made against police officers for the "selective withdrawal of police protection." *Id.* at 1008. Claims of "selective withdrawal of police protection" have also been equated to claims of "unequal enforcement of the law" and claims of "unequal police protection." *See Hanes v. Zurick*, 578 F.3d 491, 494 (7th Cir. 2009). However, because Beales cannot establish that he has been intentionally treated differently from others similarly situated, there is no need to analyze his selective enforcement claim under the selective enforcement doctrine.

To reiterate, a class-of-one equal protection plaintiff must prove that he is (1) intentionally treated differently from others similarly situated and that (2) there is "no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

To be considered "similarly situated," "comparators must be '*prima facie* identical in all relevant respects,'" or "directly comparable to [plaintiff] in all material respects[.]" *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th Cir. 2004); *Ajayi v. Aramark Bus Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)). In other words, "'it is clear that similarly situated individuals must be very similar indeed.'" *Id.* (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)).[3]

---

[3] Illustrating how similar individuals must be, the Seventh Circuit in *Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir. 1982), found two paramedics similarly situated where both "experienced the same set of circumstances and were equally responsible for patient assessment and treatment" on ambulance runs. *Id.* at 522. In *Ciechon*, one paramedic "was charged with failure to perform her duties and discharged" while the other "was never charged or disciplined in any fashion." *Id.*

Moreover, whether a comparator is similarly situated is "usually a question for the fact-finder," however, "summary judgment is appropriate when no reasonable fact-finder could find that [a] plaintiff[] [has] met [his] burden on the issue." *Srail v. Vill. of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009) (citing *McDonald*, 371 F.3d at 1002).

Additionally, "[v]arious factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment." *Racine Charter One*, 424 F.3d at 681. For example, in *Bell v. Duperrault*, 367 F.3d 703 (7th Cir. 2004), the plaintiff and purportedly comparable individuals submitted applications for different kinds of pier extensions at different times. *Id.* at 707-08. The comparable individuals also requested mere renovations as opposed to wholly new structures. *Id.* Thus, the court found that the individuals were not similarly situated for purposes of the class-of-one equal protection analysis. *Id.* at 707. Similarly, the court in *Purze* found that the class-of-one plaintiffs were not similarly situated where the "allegedly similarly-situated individuals" requested different variances, submitted their subdivision plats during different time periods, and had their plat requests granted by different boards. *Id.* at 455.

Beales alleges that he has been treated differently than "similarly situated businesses and individuals in the City of Plymouth, Wisconsin." (Compl. ¶ 15.) To the extent that Beales claims that he has been treated differently than "other" similarly situated businesses and individuals in the City of Plymouth, Wisconsin—"other" meaning those other than Lengling, Cozy Bar, Turner Hall, and Lengling's employees and customers —his class-of-one challenge fails because Beales does not identify any "other" individuals or businesses. Nor does he purport to show how he is similarly situated to "other" businesses and individuals. This argument is overly broad, and it fails to appreciate that evidence of similarity requires specificity. *See Maulding Dev., LLC v. City of Springfield*, 453

11
Case 2:08-cv-00355-WEC   Filed 01/21/10   Page 11 of 20   Document 64

F.3d 967, 971 (7th Cir. 2006) (plaintiff's argument that it was "'treated [] differently than any other developer has ever been treated,' with no evidentiary support, has no specificity").

Moreover, the plaintiff does not articulate in what ways he is similarly situated to Lengling, Cozy Bar, and its employees and customers. Ironically, the defendants also do not demonstrate why they are not similarly situated to the plaintiff; they merely argue that "Beales has failed to identify someone who is similarly situated, but <u>intentionally</u> treated differently than him." (Def.'s Br. at 9.) That Beales and Lengling both own taverns that are located in close proximity lacks the specificity required of the class-of-one equal protection analysis. Accordingly, Beales' various theories purporting to support his selective enforcement claim must be examined separately.

Beales theorizes that the defendants selectively enforced the laws and thereby violated his equal protection rights by (1) issuing citations for allowing underage persons on licensed premises in an unequal fashion; (2) failing to enforce the gambling laws at Cozy Bar; (3) failing to hold an employee of Cozy Bar responsible for vandalizing the car of a Sawdust Pub employee; (4) issuing a different number of parking tickets to Beales and his employees and customers than to Lengling and his employees and customers, and stopping Beales more times than "all Cozy Bar employees and customers"; (5) citing Beales for disorderly conduct after physically removing a customer from Sawdust Pub; (6) attempting to revoke Beales' liquor license for purported illegal activity but not revoking Lengling's license for purported illegal activity; and (7) unequally enforcing a Wisconsin statute and a city ordinance pertaining to parking.

In support of his position, Beales has submitted forty-four enclosures in addition to two affidavits. However, Beales' enclosures were introduced into the record without any supporting affidavit verifying their authenticity. While exhibits may be considered on a summary judgment motion, such exhibits must be properly made a part of the affidavit to be considered. *See Woods v.*

12

*City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2722 (3d ed. 1998). Here, neither of the plaintiff's affidavits refer to any of the forty-four enclosures, and none of the additional enclosures are sworn or certified. Therefore, Rule 56(e) would generally compel a conclusion that the unauthenticated enclosures are inadmissible and cannot be considered for purposes of summary judgment. *See Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) (citing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (stating that evidence relied upon to defeat a motion for summary judgment must be evidence of a type admissible at trial)).[4]

However, to the extent that any of Beales' enclosures are identical to any of the exhibits submitted by the defendants by way of John A. Wolfgang's affidavit, I will consider the relevant evidence. In particular, the parties submitted four police reports pertaining to incidents involving minors being found on the licensed premises of Sawdust Pub, Cozy Bar, and Turner Hall. Although John A. Wolfgang, as the attorney of record for the defendants, is not a proper affiant through whom any police report could be admitted, I will consider these reports because I construe Beales' submission of the identical documents as a waiver to the defendants' improper admission of evidence.

In considering these four police reports with respect to Beales' first selective enforcement theory, I find that they do not establish that Beales has been intentionally treated differently from others similarly situated. These four reports, along with the defendants' proposed findings of fact, indicate that Lengling's employees have been cited for allowing minors on licensed premises once for

---

[4] Although pro se litigants are held to less stringent standards than those applicable to licensed attorneys, pro se litigants must, nevertheless, follow the same rules of procedure that govern other litigants. *See United States v. Alden*, 527 F.3d 653, 661 (7th Cir. 2008).

13

every four minors found in Cozy Bar or Turner Hall, while Beales' tavern or his employees have been cited for the same violation every time a minor is found in Beales' tavern (two citations total). At first glance, the statistics appear to be unfair to Beales. However, any unfairness in the issuance of citations for allowing minors on licensed premises cannot be equated to a violation of Beales' constitutional right to equal protection. The citations referenced in these four reports span a time frame of almost five years. Moreover, the reports evidence different police officers enforcing Wisconsin's liquor laws. Even construing such evidence in the light most favorable to Beales, he has not established that he has been intentionally treated differently than someone similarly situated. Furthermore, given the expansive time frame and the involvement of different officers, I find that there is not sufficient evidence from which a reasonable jury could conclude that the statute at issue was being unequally enforced.

As for Beales' remaining theories, and as will be explained below, even if Beales' relevant enclosures were both authenticated and admissible, they would not create a genuine issue of material fact such that a reasonable fact-finder could find that Beales has been intentionally treated differently than someone who is similarly situated. Accordingly, Beales' remaining theories also do not survive summary judgment. Like in *Bell* and *Purze*, various factual traits, circumstantial nuances, and peculiarities set Beales and Lengling apart, rendering them amenable to disparate treatment.

Beales cannot maintain a class-of-one claim against the defendants under his second theory because there is insufficient evidence from which a reasonable jury could conclude that he was intentionally treated differently than Lengling with respect to the enforcement of Wisconsin gambling laws. Police investigated both businesses for illegal gambling, but did not issue any citations to either Beales or Lengling for allowing illegal gambling on their premises, despite Beales' admission that his "shake of the day" is illegal. (DPFOF ¶¶ 20-21.) Beales attached an enclosure illustrating illegal

14

gambling was occurring at Cozy Bar. However, even if such enclosure were admissible, the defendants' failure to cite Lengling would actually be similar to their actions taken with respect to Beales.[5] Because both tavern owners were investigated and neither was cited nor prosecuted, they were not intentionally treated differently.

Beales' third theory, that the defendants violated his right to equal protection by failing to cite Wendling for vandalizing a vehicle, is a tenuous one at best. Assuming that this alleged injury is personal to Beales, thus eliminating any standing issue, this theory of liability also fails because, as discussed above, the equal protection clause does not entitle one to an adequate police investigation. *See Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). The police investigated this incident and questioned witnesses about the incident, which is distinguishable from withdrawing *all* police protection. Moreover, there is no evidence that someone bribed the police for not holding Wendling responsible for the vandalism.

Beales also faces an uphill battle with respect to his fourth selective enforcement theory. First, Beales argues, in part, that he has been "pulled over at bar close[] more often than all Cozy Bar employees and customers." (Pl's Br. at 15.) To be similarly situated to Lengling and his employees and customers, Beales would need to demonstrate that the police did not stop them at "bar close" despite their committing traffic violations. Beales has not met this burden.

Beales is not similarly situated to Lengling because he has not demonstrated that Lengling has committed the same, much less any, traffic violations and was not stopped by police. Additionally,

---

[5] In one of his unauthenticated enclosures, Beales presents evidence illustrating that the Plymouth Police Chief informed Lengling that the Attorney General's office and the district attorney's office would not prosecute Lengling for illegal gambling. However, Agent Kapitany told Beales the opposite, i.e., that Beales would lose his license if he allowed gambling. (Beales Aff. ¶ 15.) Even if the enclosure evidencing what the police chief told Lengling were admissible, this allegation is irrelevant because actions speak louder than words. Neither Beales nor Lengling has been prosecuted or has lost their license for allowing illegal gambling at their taverns.

Beales states that in eight years, he has been pulled over five times at bar close for making a "wide turn." (Beales' Aff. ¶ 17). However, Cozy Bar employees have been stopped and then arrested for operating while intoxicated a total of five times and for operating a motor vehicle with a suspended driver's license one time. (DPFOF ¶¶ 37, 39.)

Because there is no evidence suggesting that the police did *not* stop Cozy Bar employees and customers for any kind of traffic violation, the court fails to see the similarity between Beales, on the one hand, and Lengling and Cozy Bar employees and customers, on the other hand, who operate motor vehicles around the time of "bar close." Moreover, Beales and the individuals he purports to be similar to were pulled over for different violations, and while Beales was never cited or arrested after being pulled over, Cozy Bar employees were arrested. In any event, the evidence pertaining to this theory of liability shows that, while the treatment may have been different, it was certainly not unfavorable or unequal.

Second, Beales' argument that he was treated unequally with respect to the defendants' issuance of parking tickets also fails because he has not presented any evidence to substantiate this claim. Beales does not dispute that Lengling received forty parking tickets, nor does he indicate how many parking tickets he has received in the same time span. If anything, the record establishes that Lengling received more parking tickets than Beales. Therefore, said theory of liability does not survive summary judgment.

Beales' fifth theory—that being charged with disorderly conduct amounted to unconstitutional disparate treatment—also does not survive summary judgment because he has not demonstrated how he is similarly situated to any other owner, bartender, or bouncer. While it is possible that there have been unruly customers at other bars who have been physically removed, Beales does not describe any such incident occurring at another bar in Plymouth, much less any other owner, bartender, or bouncer

16

who has *not* received a disorderly conduct citation for engaging in such conduct. Beales merely alleges that no other owner, bartender, or bouncer has been cited for "enforcing the law or enforcing peaceful conduct in the business." (Pl.'s Br. at 12.) Not only can Beales not prevail on a class-of-one equal protection claim on summary judgment by relying upon such a sweeping and unsupported statement, but the disorderly charge against Beales has been dismissed, rendering his claim moot.

Beales' final two theories (his sixth and seventh) suffer from the same problems as the rest. Beales argues that he has been treated unequally because the defendants have attempted to revoke his liquor license for purported illegal activity, but they have not attempted to revoke Lengling's license for illegal activity. First, none of the competent summary judgment evidence sets forth any facts that substantiate this claim. From all of Beales' submissions, however, including those that have not been authenticated, it appears that the Plymouth Police Department prompted Beales' appearance before the city council for license revocation two times, once for failing to have a city-licensed bartender on premises and another time for being charged with resisting arrest after denying a police request to review purchasing records at midnight.

Lengling, however, put his liquor license in the name of another individual. (Tauscheck Aff. ¶ 5.) Beales argues that despite such action being illegal, Lengling's liquor license has not been threatened. (Pl.'s Br. at 18-19.)

Even if I were to consider all submissions, Beales has still not submitted admissible evidence from which a reasonable jury could find that he was intentionally treated differently than Lengling. Simply stated, although Beales may have had to appear before the city council in conjunction with this matter, and Lengling has not had to withstand the same scrutiny, the city council has never revoked Beales' liquor license. Thus, if both owners have maintained their licenses in the face of alleged illegal activity, Beales is no worse off for having gone before the city council, and any harm he

17

suffered was de minimis. *See Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007) (the doctrine, *de minimis non curat lex* (the law doesn't concern itself with trifles), applies to "constitutional as to other cases").

The main thrust of Beales' seventh and final theory is that the defendants have unequally enforced certain parking mandates. More precisely, Beales first states that Wis. Stat. § 346.53(5) is not being enforced "one block from Plaintiff's bar," where "only six feet exists between the crosswalk and the nearest marked space." (Pl.'s Br. at 20.) This theory of liability is easily disposed of. Beales simply does not identify who he is similarly situated to with respect to the non-enforcement of § 346.53(5), much less how he is similarly situated.

Second, Beales argues that, while the police enforced Wis. Stat. § 346.53(5) by eliminating the parking spaces in front of Beales' tavern, they have failed to enforce a new parking ordinance (which Beales fails to identify) that purportedly prohibits parking within four feet of any driveway to the spots in front of the Cozy Bar; nor, according to Beales, do they ticket anyone for violating such ordinance when parked in front of Cozy Bar. According to Beales, the defendants used § 346.53(5) as a proxy to adversely affect Beales' business.

Again, the admissible evidence does not support this allegation. Yet, even if I were to consider every allegation and enclosure that purports to support this theory, Beales still cannot survive summary judgment.

Importantly, this scenario involves different actors enforcing different mandates. First, it was the City of Plymouth that eliminated parking in front of Sawdust Pub pursuant to Wis. Stat. § 346.53(5), not officers of the Plymouth Police Department. (Beales Encl. # 44.) In contrast, it was Plymouth Police Department officers, not the City of Plymouth, who have allegedly not enforced an unidentified parking ordinance against individuals parked in front of Cozy Bar. In considering all of

18

the unauthenticated documents, I still find that Beales cannot prove that he was intentionally treated differently than others similarly situated with respect to this theory of liability.

What Beales has submitted in support of his position amounts to bare allegations backed by unauthenticated enclosures. Any evidence Beales submitted is not "sufficiently strong" that a jury could reasonably find in his favor. *See Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir. 1994). Because Beales has failed to raise a genuine issue of material fact as to whether he has been intentionally treated differently than someone who is similarly situated, it is not necessary to turn to the second prong of the class-of-one equal protection analysis, which requires an examination of whether there was a rational basis for the difference in treatment.

In sum, I conclude that Beales has not established a claim under a class-of-one equal protection theory. Because Beales has not satisfied the first element of the qualified immunity analysis, the defendants are entitled to qualified immunity.

## B. RICO

I also construe Beales' Complaint as alleging a claim under the Racketeer Influenced and Corrupt Organization ("RICO") statutes. Any evidence Beales offers to support his RICO claim, however, does not venture beyond mere conclusory allegations. None of the competent summary judgment evidence sets forth any facts substantiating Beales' allegation that the defendants have committed racketeering activities. Thus, Beales' RICO claim is also dismissed.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that this action be and hereby is dismissed;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 21st day of January 2010 at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge